UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | No. 20 CR 10076-PBS |
| | ) | |
| FILOMENO MONTEIRO | ) | |
| | ) | |
| Defendant | ) | |
| _____ | ) | |

**MOTION TO SUPPRESS CELL PHONE, AND CELL PHONE DATA, SEIZED INCIDENT TO ARREST, WITHOUT A WARRANT AND/OR BEYOND THE SCOPE OF A WARRANT.**

**Request for Evidentiary Hearing**

COMES NOW defendant FILOMENO MONTEIRO, by and through his attorney of record, and hereby moves this Honorable Court to suppress as evidence a cell phone seized from his person, incident to his arrest, and the data collected therefrom, without a warrant, and all fruits thereof. Said seizure was conducted beyond the scope of the warrant for Mr. MONTERO's residence at 75 Bartlett Street, Apartment 1, Brockton, Massachusetts. Further, the affidavit's request to search for cell phones *at said location*, and the data thereon, had no case specific nexus to any criminal activity. Lastly, the information used to obtain the warrant was "stale."

This motion is made on the ground that good cause exists therefore in that the search and seizure of the cell phone was violative of the Fourth Amendment of the U.S. Constitution.

Preliminary Statement of Relevant Facts[1]

In December 2019 task force agents began an investigation into drug activity in the City of Brockton with the assistance of a confidential informant. On December 16, 2019 Trooper Morrissey, and a CW engaged in a 20 gram Fentanyl transaction after recorded negotiations with a "John John" at 774-716-5611. Prior to John John's arrival a call was placed from 508-577-9744 asking for directions to CW's residence. Two individuals came to the residence. The incident was audio and video recorded. Trooper Morrissey observed the **one individual (John John)** deliver a weighed 20 grams of white powder to the CW in return for 700 dollars. That individual was later identified as co-defendant COLLINS. The individual believed by the government to be Mr. MONTEIRO was not part of the negotiations or the delivery of the contraband. That individual, according to the reports produced, was nothing more than merely present during that December 16, 2019 transaction.

Following the drug transaction with the co-defendant, the vehicle in which the two individuals came was stopped by a Bridgewater officer at the direction of the surveilling agents. The female driver, COLLINS and MONTEIRO were reportedly identified.

On January 2, 2020 the CW negotiated with COLLINS to purchase additional fentanyl and a hand gun. On January 3, 2020 the CW, and

---

[1] See attached Affidavit, Exhibit A, with relevant search warrant attachments. See also reports concerning said search, Exhibits B and C.

Trooper Morrissey engaged in a transaction that was audio and video recorded. COLLINS reportedly delivered a finger of fentanyl in exchange for $350 and MONTEIRO reportedly exchanged a handgun for an additional $350. (Mr. MONTEIRO's identification at this transaction is hotly contested as set forth in the motions for release. See Dkt. Nos, 43 and 51 and the exhibits included therewith. Mr. MONTERO has also given F.R.Cr.P. Rule 12.1(a)(2) notice of an alibi defense).

The affidavit in support of the warrant for Mr. MONTEIRO's residence provided generic language including:

> ¶ 11vi. Drug traffickers commonly have photographs of themselves, their associates, their property and their products in their possession or in their residences, and frequently maintain these photographs on their cell phone(s) and other electronic devices;

The affidavit further provides the purported basis for the necessity for the cell phone seizures and search in paragraphs 60-64.  In paragraph 60, the affiant lumps MONTEIRO into a generalized accusation that "the Target Subjects and their coconspirators have used cellular telephones to communication [sic] about and further their drug trafficking activities, have changed their telephone numbers, and have used multiple cellular telephones at the same time." That statement, however,  is materially misleading concerning MONTEIRO, as the only evidence concerning his alleged use of a cell phone was limited to his phone being allegedly used to ask the CW for directions prior to

the December 16, 2019 alleged transaction (although there is no evidence it was him on the phone).

All further allegations for the necessity of the cell phone search and seizure are generalized, and not case specific, concerning what type of data may be kept on cell phones and the need for technical analysis.

Mr. MONTEIRO's cell phone was seized from his person at the time of his arrest "outside" the target location, 75 Bartlett St. Apt 1, Brockton.  See Exhibit B. The phone was subsequently forensically examined without a further warrant. See Exhibit C.

**ARGUMENT**[2]

1. THE AFFIDAVIT IN SUPPORT OF THE WARRANT TO SEIZE AND SEARCH MR. MONTEIRO'S CELL PHONE DID NOT ESTABLISH PROBABLE CAUSE BECAUSE IT OFFERED NO CASE-SPECIFIC FACTS SUGGESTING THAT EVIDENCE OF DRUG TRAFFICKING ON A CELL PHONE WOULD BE FOUND THERE.

    1. *Affidavits Must Establish Probable Cause That Evidence Will Be Found in the Place To Be Searched*.

The Fourth Amendment of the United States Constitution protects people against unreasonable searches and seizures by requiring that all search warrants be based on probable cause and

---

[2] With thanks to Stuart Friedman of the Michigan ACLU who have presented this issue in an amicus brief in People v Hughes, Michigan Supreme Court Dkt. # 158652.

describe with particularity the places and items to be seized and searched. This provision was meant to protect against general warrants, a hated English practice that allowed a general rummaging through the life of anybody suspected of a crime. See Stanford v Texas, 379 U.S. 476, 481; 85 S Ct 506; 14 L Ed 2d 431 (1965) (general warrants were "the worst instrument of arbitrary power . . . that ever was found in an English law book"), quoting Boyd v United States, 116 US 616, 624; 6 S Ct 524; 29 L Ed 746 (1886).

The probable cause requirement protects people in two ways: it ensures there is adequate justification for a search, see Arizona v Gant, 556 U.S. 332, 345; 129 S Ct 1710; 173 L Ed 2d 485 (2009), and it limits the scope of the search based on the warrant, see United States v Hill, 459 F.3d 966, 973 (9th Cir. 2006). This requirement serves the goal of the Fourth Amendment "to place obstacles in the way of a too permeating police surveillance." . Carpenter v United States, 585 U.S. __; 138 S Ct 2206, 2014; 201 L Ed 2d 507 (2018)(citation and quotation marks omitted).

Cell phone and data searches in today's technological world require special attention because of the invasion of privacy that occurs from a review of data collected by law enforcement, necessitating judicially authorized warrants. Carpenter v United States, Id., 138 S. Ct 2206; (warrantless acquisition of

cellphone location information); ACLU v Clapper, 785 F.3d 787 (2nd Cir. 2015) (bulk collection of call records), United States v Katzin, 769 F.3d 163 (CA 3, 2014) (warrantless GPS tracking), Alasaad v Nielsen, No. 17-cv-11730-DJC, (D. Mass. Nov. 12, 2019)(warrantless searches of electronic devices at the border), Riley v California, 573 U.S. 373;134 S Ct 2473; 189 L Ed 2d 430 (2014) (cellphone searches incident to arrest...explaining that even microcomputers, such as cellphones, have "immense storage capacity" that may contain "every piece of mail [people] have received for the past several months, every picture they have taken, or every book or article they have read," which can allow the "sum of an individual's private life [to] be reconstructed"); United States v Jones, 565 U.S. 400; 132 S Ct 945; 181 L Ed 2d 911 (2012) (warrantless GPS tracking).

A police officer has probable cause to conduct a search when "the facts available to [him] would 'warrant a [person] of reasonable caution in the belief'" that contraband or evidence of a crime is present. Florida v Harris, 568 U.S. 237, 243; 133 S Ct 1050; 185 L. Ed 2d 61 (2013), quoting Texas v Brown, 460 U.S. 730, 742; 103 S Ct 1535; 75 L. Ed 2d 502 (1983) (alterations in original). An affidavit supporting a search warrant must indicate "that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238; 103 S Ct 2317; 76 L Ed 2d 527 (1983). There must "be a nexus . . . between

the item to be seized and criminal behavior." Warden, Md Penitentiary v Hayden, 387 U.S. 294, 307; 87 S Ct 1642; 18 L Ed 2d 782 (1967); *accord* United States v. Brown, 828 F.3d 375, 382 (6th Cir. 2016) (requiring that affidavits must set forth "sufficient facts demonstrating why the police officer expects to find evidence in the [place to be searched] rather than in some other place") (citation omitted). This connection must be specific and concrete, not vague or generalized. See Brown, 828 F.3d at 375.

Prior to executing a search, police officers, with some exceptions, must obtain a search warrant supported by probable cause to believe that (1) a crime has been committed, and (2) that "enumerated evidence of the [crime] will be found at the place to be searched--the so-called 'nexus' element." United States v. Hicks, 575 F.3d 130, 136 (1st Cir. 2009). See also United States v. Joubert, 778 F.3d 247, 251 (1st Cir. 2015).

In the affidavit in issue, there existed only extremely limited information concerning Mr. MONTEIRO's alleged use of his cell phone to further any drug transaction, to wit: only the alleged use of the phone to ask directions to the CW's residence on December 16, 2019. Such limited use clearly demonstrates the lack of any nexus between the alleged criminal activity and any cell phone expected to be found at Mr. MONTEIRO's residence. Of

note, the search produced no cell phone, nor evidence of criminal activity.

*2. An Officer's "Training and Experience," Without More, Is Insufficient to Establish Probable Cause to Search.*

An officer's training and experience alone is not sufficient to establish probable cause. While training and experience may be relevant to determining probable cause, it cannot substitute for specific facts. United States v Roman, 942 F.3d 43, 51–52 (1st Cir. 2019) ("We have further expressed skepticism that probable cause can be established by the combination of the fact that a defendant sells drugs and general information from police officers that drug dealers tend to store evidence in their homes." (quotation marks and citation omitted)); United States v Lyles, 910 F.3d 787, 793–794 (4th Cir. 2018) ("The government invites the court to infer from the trash pull evidence that additional drugs probably would have been found in Lyles's home. Well perhaps, but not probably."); United States v Danhauer, 229 F.3d 1002, 1006 (10th Cir. 2000) (repetitive statements about the defendants' house and allegations that the defendants were manufacturing drugs were insufficient to establish probable cause to search the house); United States v Rowland, 145 F. 3d 1194, 1204 (10th Cir. 1998) ("Probable cause to search a person's

residence does not arise based solely upon probable cause that the person is guilty of a crime."); United States v Khounsavanh, 113 F.3d 279, 285 (1st Cir. 1997) (controlled buy was not per se sufficient to establish probable cause to search a residence); United States v Lalor, 996 F.2d 1578, 1582-1583 (4th Cir. 1993) ("residential searches have been upheld only where some information links the criminal activity to the defendant's residence"), *quoting* United States v Williams, 974 F.2d 480, 481-482 (4th Cir. 1992); United States v Rosario, 918 F. Supp. 524, 531 (U.S.D.C. 1996) ("While this court acknowledges the extensive training and expertise of [the] agent [], her statements in the affidavit simply provide generalized information regarding how drug traffickers operate."); United States v Rios, 881 F. Supp. 772, 776-777 (U.S.D.C. Conn. 1995) (officer's general averments based on training and experience do not, standing alone, constitute a substantial basis for the issuance of a search warrant).

There are, however, a few courts that have ruled the opposite way. See, e.g., United States v. Pitts, 6 F.3d 1366, 1369 (CA 9, 1993) ("[I]n the case of drug dealers, evidence is likely to be found where the dealers live."), *citing* United States v Terry, 911 F.2d 272, 275 (9th Cir. 1990). But see Brown, supra 828 F.3d at 384 ("[I]f the affidavit fails to include facts that directly connect the residence with the suspected drug

dealing activity . . . it cannot be inferred that drugs will be found in the defendant's home—even if the defendant is a known drug dealer.").

A supporting affidavit for a search warrant must allege facts *specific* to the investigation, such as a reliable confidential informant purchasing drugs *in a suspect's home*, to establish probable cause to search that particular place. See United States v. Ellison, 632 F.3d 347, 349 (6th Cir. 2011). Law enforcement generally are not permitted to search particular places without *investigation-specific reasons* to believe evidence will be found there. See Brown, *supra*, 828 F.3d at 385. The same principle applies to cell phones. United States v Lyles, 910 F.3d 787, 795 (4th Cir. 2018) (probable cause to believe that residence was connected to drug trafficking insufficient basis for searching phone found on the premises); United States v. Griffith, 867 F.3d 1265 (D.C. Cir. 2017).[1] (Insufficient to

---

[1] "Most of us nowadays carry a cell phone. And our phones frequently contain information chronicling our daily lives—where we go, whom we see, what we say to our friends, and the like. When a person is suspected of a crime, his phone thus can serve as a fruitful source of evidence, especially if he committed the offense in concert with others with whom he might communicate about it. Does this mean that, whenever officers have reason to suspect a person of involvement in a crime, they have probable cause to search his home for cell phones because he might own one and it might contain relevant evidence? That, in essence, is the central issue raised by this case.

justify search of home for cell phone). (The government's proposition that probable cause exists because "nearly everyone now carries a cell phone, and because a phone frequently contains all sorts of information about the owner's daily activities, a person's suspected involvement in a crime ordinarily justifies searching her home for any cell phones" fails. "Finding the existence of probable cause in [such a] case, therefore, would verge on authorizing a search of a person's home almost anytime there is probable cause to suspect her of a crime. We cannot accept that proposition").

The D.C. Circuit's *Griffith* case provides helpful insight. In the case at bar there is, equally, no evidence that any cell phone that could be found at the target location had any relationship to the alleged criminal activity other than generalized accusations based on the officer's experience. The only allegation that Mr. MONTEIRO used a cell phone at all was a call allegedly placed asking for directions to CW's location in December 2019 (three months prior to the warrant for Mr. MONTEIRO's residence) for a transaction carried out by Mr. COLLINS (It is also un-alleged, and unknown, who was actually was

---

United States v. Griffith, 867 F.3d 1265 (D.C. Cir. 2017).

11

using Mr. MONTEIRO's phone that was simply used to ask directions to the CW's residence).[2]

**II. THE SEIZURE AND SEARCH OF THE CELL PHONE FROM MR. MONTEIRO's PERSON OUTSIDE THE TARGET LOCATION EXCEEDED THE SCOPE OF THE WARRANT, AND WAS A WARRANTLESS SEARCH INCIDENT TO ARREST IN VIOLATION OF THE FOURTH AMENDMENT.**

Mr. MONTEIRO was arrested "*outside*" his residence at the time of the execution of the search warrant. A cell phone was seized from his person and subsequently searched. See Exhibits B and C.

> The fact that an arrestee has diminished privacy interests does not mean that the Fourth Amendment falls out of the picture entirely. Not every search "is acceptable solely because a person is in custody." Maryland v. King, 569 U. S. ___, ___, 133 S. Ct. 1958, 1979, 186 L. Ed. 2d 1, 30 (2013). To the contrary, when "privacy-related concerns are weighty enough" a "search may require a warrant, notwithstanding the diminished expectations of privacy of the arrestee."*Ibid*.

Riley v. California, 134 S. Ct. 2473, 2488 (2014).

The Supreme Court in *Riley* instructs us that a search of a cell phone that is seized incident to arrest must be done with a warrant. That did not occur here. The government, on the other

---

[2] It is certainly not unusual for people to borrow another passenger's phone in a vehicle based on numerous factors such as being out of the particular carrier's service area or low battery). The entire transaction, from negotiation to delivery, was conducted by the co-defendant rather than Mr. MONTEIRO.

hand, will assuredly argue that the search conducted was included in the search warrant for the residence 75 Bartlett Ave, Apt 1 Brockton, MA, which also permitted the search for cell phone evidence (but see above).

> For Fourth Amendment purposes, a house's curtilage is "the area immediately surrounding and associated with the home." Id. at 6, 133 S.Ct. 1409 (citation and internal quotation marks omitted). "The protection afforded [to a house's] curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened." California v. Ciraolo, 476 U.S. 207, 212-13, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986). Therefore, "[w]hen a law enforcement officer physically intrudes on the curtilage to gather evidence, a search within the meaning of the Fourth Amendment has occurred.... Such conduct thus is presumptively unreasonable absent a warrant." Collins v. Virginia, --- U.S. ----, 138 S.Ct. 1663, 1670, 201 L.Ed.2d 9 (2018) (citation omitted).

United States v. Owens, 917 F.3d 26, 34 (1st Cir. 2019).

Any such argument by the government that the search and seizure was conducted as part and parcel of the search warrant for the residence, would be completely misplaced because the cell phone was seized, not in accordance with specific limitations of the search warrant, but rather directly from Mr. MONTEIRO's person *outside of the residence*. The area where the arrest took place was not intimately connected to the privacy interests of the target location, and thus not part of the *curtilage*. At issue is whether the location "outside" the target location is

"appurtenant". Here, it is evident that the arrest and search of Mr. MONTEIRO was not "appurtenant" to the target location.

While "appurtenant" structures are properly searched pursuant to a search warrant, see United States v. Fagan, 577 F.3d 10, 13 (1st Cir. 2009) ("So long as the officers executing the warrant have an objectively reasonable basis, in light of the known characteristics of the location and the evidence at hand, for concluding that a structure is appurtenant to the premises specified in the search warrant, that structure may validly be searched under the purview of the warrant,") there is no reasonable basis for law enforcement agents conducting the search to believe that an arrest and search *outside* of a multi unit apartment building is an area associated with any of the privacy interests of the target location.

Mr. MONTEIRO's person was *also not included* in the warrant.[3] Since the search of Mr. MONTEIRO also took place well outside of the place to be searched, in an area that was not part of the curtilage of, or appurtenant to, the apartment building in an area not limited to apartment 1, the target location, the seizure would have to be justified by other recognized warrant

---

[3] The search warrant certainly could have, but did not, include the person of FILOMENO MONTEIRO.

exceptions to be lawful.  There are no such exceptions as the seizure and search cannot be justified as a search incident to arrest.

"On March 16, 2020 Filomeno Monteiro was arrested outside 75 Bartlett St in Brockton on a federal arrest warrant as part of []. During Monteiro's arrest, investigators seized an Apple iPhone 8 serial # FFMYVGW1JC8C." See Exhibit B.  The seizure and search of Mr. MONTEIRO's cell phone was simply a search conducted incident to that arrest and not part and parcel of the search warrant being executed.  The mandate of the Supreme Court in *Riley,* requires a separate warrant for such cell phone searches that are seized incident to arrest.  Instead, "[p]ursuant to search warrant, Trooper Jason Abramoski conducted a forensic analysis of this iPhone and determined it to hold phone #508-577-9744." Exhibit B.

> The Supreme Court in *Riley* instructed us that it:
> is not that the information on a cell phone is immune from
> search; it is instead that a warrant is generally required
> before such a search, even when a cell phone is seized
> incident to arrest. Our cases have historically recognized
> that the warrant requirement is "an important working part
> of our machinery of government," not merely "an
> inconvenience to be somehow 'weighed' against the claims of
> police efficiency."Coolidge v. New Hampshire, 403 U. S. 443,
> 481, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971).

Riley v. California, 134 S. Ct. 2473, 2493 (2014).

**III. THE INFORMATION IN THE AFFIDAVIT IN SUPPORT OF THE WARRANT ALLEGING THAT MR. MONTEIRO WAS ENGAGED IN DRUG ACTIVITY AS PART OF A CONSPIRACY WITH COLLINS AND THAT EVIDENCE OF THE SAME, INCLUDING CELL PHONE(S), COULD BE FOUND AT 75 BARTLETT ST., APT 1, BROCKTON, MA WAS "STALE."**

Information contained in an affidavit is stale if it established probable cause at some point in the past but does not support probable cause at the time of the warrant's issuance. Sgro v. United States, 287 U.S. 206, 210, 53 S. Ct. 138, 77 L. Ed. 260 (1932) ("[I]t is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time."). When evaluating a claim of staleness, courts "do not measure the timeliness of information simply by counting the number of days that have elapsed. Instead, [courts] must assess the nature of the information, the nature and characteristics of the suspected criminal activity, and the likely endurance of the information." United States v. McLellan, 792 F.3d 200, 210 (1st Cir. 2015), *citing* United States v. Morales-Aldahondo, 524 F.3d 115, 119 (1st Cir. 2008). However, "*[i]n the context of drug crimes, information goes stale very quickly because drugs are usually sold and consumed in a prompt fashion*." United States v. Joubert, 778 F.3d 247, 252 (1st Cir. 2015) *citing* United States v. Brooks, 594 F.3d 488, 493 (6th Cir. 2010)(emphasis added). Mr. MONTEIRO acknowledges that:

16

> While courts have recognized that drug information may go stale quickly, they have also found that "it is common ground that drug conspiracies tend to be ongoing operations, rendering timely information that might, in other contexts, be regarded as stale." Schaefer, 87 F.3d at 568 [United States v. Schaefer, 87 F.3d 562, 568 (1st Cir. 1996). "Whether or not the averments in an affidavit are sufficiently timely to establish probable cause depends on the particular circumstances of the case.]; see also United States v. Nocella, 849 F.2d 33, 40 (1st Cir. 1988) ("By its very nature, drug trafficking, if unchecked, is apt to persist over relatively long periods of time.").

United States v. Lewis, 263 F. Supp. 3d 357, 362 (D. Mass. 2017)

The instant case involves an alleged drug crime, a conspiracy to distribute fentanyl (along with an alleged firearm sale).  Each of the alleged drug transactions were carried out by his co-defendant on December 16, 2019 and January 3, 2020.  It must be assumed that information concerning specific allegations against Mr. MONTEIRO concerning any activity with his co-defendant would go stale very quicky as pointed out by the First Circuit in Joubert supra.  The affidavit presents information that Mr. MONTEIRO was last engaged in *any* activity with Mr. COLLINS (again information that is hotly contested) over two months prior to the application for the warrant on January 3, 2020. The alleged activity involving his alleged drug involvement, and any use of a cell phone, allegedly occurred over three months prior to the warrant and that activity was limited to asking for directions to the location.  None of the alleged activity was ever related to the targeted location.

There are simply no facts alleged in the affidavit "so closely related to the time of the [application and issuance] of the warrant as to justify a finding of probable cause at that time." Sgro v. United States, supra, 287 U.S. at 210.

## CONCLUSION

Mr. FILOMENO MONTEIRO respectfully submits for each of the reasons set forth above, and the evidence expected to be presented at the hearing on this motion, that this Honorable Court should grant his motion to suppress the cell phone taken from him at the time of his arrest, and the fruits thereof, including but not limited to evidence obtained through a forensic examination.

Date: August 31, 2020           Respectfully submitted,

                                BOURBEAU & BONILLA LLP

                                /s/ Michael C. Bourbeau

                                MICHAEL C. BOURBEAU
                                BBO # 545908
                                80 Washington St., Bldg. K
                                Norwell, MA 02061
                                (617)350-6565

                                Attorney for Defendant
                                FILOMENO MONTEIRO

**Certificate of Service**
I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on the above date.
/s/ Michael C. Bourbeau

# AFFIDAVIT OF ATTORNEY MICHAEL C. BOURBEAU

I, Michael C. Bourbeau, on oath, declare, depose and say that:

I am an attorney at law and a member of the bars of the State of Massachusetts and the State of California, and each and every federal district and appellate court therein, as well as the United States Supreme Court. I have been practicing criminal defense since 1979.

I have been appointed by this Honorable Court pursuant to the Criminal Justice Act to represent Mr. FILOMENO MONTEIRO. Through such representation I have reviewed the discovery provided to date by the government and conducted an ongoing investigation into the allegations in the Indictment.

Each of the facts contained in the attached motion to suppress the cell phone seized from Mr. MONTEIRO, and fruits thereof, are provided based on information and belief and based on the facts set forth, and derived from, the government's discovery including the search warrant, attachments, affidavits, and reports.  <u>See</u> Exhibits.

I declare under penalty of perjury that the foregoing is true and correct. Executed this August 31, 2020 at Kingston, MA.

s/*Michael C. Bourbeau*
Michael C. Bourbeau
